TODD KIM, Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

MARK A. PACELLA, Trial Attorney (DC Bar # 470485)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3126
Facsimile: (202) 305-0506
Email: mark.pacella@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLAMETTE RIVERKEEPER and CONSERVATION ANGLER, | Case No.: 6:21-cv-00034-AA |
| Plaintiffs, | MOTION TO LIMIT REVIEW TO THE ADMINISTRATIVE RECORD |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, et al., | |
| Defendants, | |
| and | |

Motion to Limit Review to the Administrative Record - i

OREGON DEPARTMENT OF FISH AND
WILDLIFE,

      Defendant-Intervenor.

## MOTION

Plaintiffs propounded discovery on September 3, 2021. Federal Defendants respectfully request that the Court issue an order confirming that the Court's review of Plaintiffs' claims are limited to the administrative record and, thus, no discovery is permitted. The parties made a good faith effort to confer regarding this motion but have been unable to resolve this dispute. Plaintiffs oppose this motion. Defendant-Intervenors take no position on this motion.

**TABLE OF CONTENTS**

PAGE

I.      INTRODUCTION...................................................................................................................1

II.     STATUTORY BACKGROUND.............................................................................................2

    A.    Endangered Species Act.................................................................................................2

    B.    National Environmental Policy Act.................................................................................3

    C.    The APA and its Interplay with the ESA and NEPA.......................................................3

III.    FACTUAL BACKGROUND..................................................................................................6

IV.     ARGUMENT.........................................................................................................................8

    A.    Plaintiffs' Claims Are Subject to the Scope and Standard of Review of the APA.........8

    B.    Discovery Is Not Available In this APA Record Review Case.......................................11

    C.    Plaintiffs Cannot Show that Discovery is Available on Either their APA Claim or their ESA Citizen-Suit Claims.................................................................................................13

        1.    The APA's Scope of Review and Standard of Review Are Inseparable...............14

        2.    Karuk Tribe Is the Law of this Circuit, Consistent with Supreme Court Authority and More than Three Decades of Ninth Circuit Authority....................................15

V.      PLAINTIFFS' DISCOVERY REQUESTS WERE SERVED IN VIOLATION OF THE COURT'S SCHEDULING ORDER.....................................................................................19

VI.     CONCLUSION....................................................................................................................21

## TABLE OF AUTHORITIES

CASES                                                                                                                PAGE

*Am. Wild Horse Campaign v. Bernhardt*,
   963 F.3d 1001 (9th Cir. 2020) ...................................................................................................5

*Animal Def. Council v. Hodel*,
   840 F.2d 1432 (9th Cir. 1988) ..................................................................................................13

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*,
   *Serv.*, 273 F.3d 1229 (9th Cir. 2001) .......................................................................................10

*Bair v. Cal. Dep't of Transp.*,
   982 F.3d 569 (9th Cir. 2020) .................................................................................................5, 8

*Barapind v. Enomoto*,
   400 F.3d 744 (9th Cir. 2005) ....................................................................................................9

*Bark v. Northrop*,
   2 F. Supp. 3d 1147 (D. Or. 2014).........................................................................................8, 13

*Barringer v. Clackamas Cnty.*,
   Case No.:3:09-CV-00068-AC,
   2012 WL 1574817 (D. Or. May 3, 2012).................................................................................21

*Bennett v. Spear*,
   520 U.S. 154 (1997)...........................................................................................................3, 4, 8

*Camp v. Pitts*,
   411 U.S. 138 (1973).................................................................................................11, 12, 15, 19

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) ...............................................................................................3, 5

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971)...........................................................................................................11, 15

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ..................................................................................................10

*Conservation Force v. Salazar*,
   753 F. Supp. 2d 29 (D.D.C. 2010)..............................................................................................4

*Fence Creek Cattle Co. v. U.S. Forest Serv.,*
   602 F.3d 1125 (9th Cir. 2010) ...................................................................................................13

*Florida Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985).....................................................................................................................15

*Franks v. Salazar,*
   816 F. Supp. 2d 49 (D.D.C. 2011).............................................................................................4

*Friends of the Clearwater v. Dombeck,*
   222 F.3d 552 (9th Cir. 2000) ...................................................................................................11

*Friends of the Payette v. Horseshoe Bend Hydroelec. Co.,*
   988 F.2d 989 (9th Cir. 1993) ...................................................................................................19

*Grand Canyon Trust v. U.S. Bureau of Reclamation,*
   691 F.3d 1008 (9th Cir. 2012) ..................................................................................................9

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy,*
   383 F.3d 1082 (9th Cir. 2004) ................................................................................................10

*In re Osborne,*
   76 F.3d 306 (9th Cir. 1996)......................................................................................................16

*Karuk Tribe of California v. U.S. Forest Service,*
   681 F.3d 1006 (9th Cir. 2012) .........................................................................................passim

*Lands Council v. Powell,*
   395 F.3d 1019 (9th Cir. 2005) .................................................................................................12

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990)......................................................................................................................5

*Montana v. Bernhardt,*
   443 F. Supp. 3d 1185 (D. Mont. 2020) ............................................................................14, 18

*Native Ecosystems Council v. U.S. Forest Serv.,*
   428 F.3d 1233 (9th Cir. 2005) ...................................................................................................5

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs,*
   384 F.3d 1163 (9th Cir. 2004) .................................................................................................12

*Ninilchick Traditional Council v. United States,*
    227 F.3d 1186 (9th Cir. 2000) ..................................................................................................9

*Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.,*
    475 F.3d 1136 (9th Cir. 2007) ................................................................................................11

*Occidental Eng'g Co. v. INS,*
    753 F.2d 766 (9th Cir. 1985) ...........................................................................................5, 6, 7

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.,*
    625 F.3d 1092 (9th Cir. 2010) .................................................................................................8

*Pac. Rivers Council v. Shepard,*
    No. 03:11-CV-442-HU, 2012 WL 950032 (D. Or. Mar. 20, 2012)...................................14, 18

*Protect Our Lakes v. U.S. Army Corps of Eng'rs,*
    No. 1:13-cv-402-JDL, 2015 WL 732655 (D. Me. Feb. 20, 2015)...............................................4

*Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy,*
    898 F.2d 1410 (9th Cir. 1990) ...............................................................................................10

*Rio Grande Silvery Minnow v. U.S. Bureau of Reclamation,*
    601 F.3d 1096 (10th Cir. 2010).................................................................................................9

*San Luis & Delta-Mendota Water Auth. v. Jewell,*
    747 F.3d 581 (9th Cir. 2014) ..............................................................................................9, 12

*San Luis & Delta-Mendota Water Auth. v. Locke,*
    776 F.3d 971 (9th Cir. 2014) ..............................................................................................9, 12

*Sierra Club v. Marsh,*
    816 F.2d 1376 (9th Cir. 1987) ...............................................................................................10

*Sierra Club v. McLerran,*
    No. C11-1759RSL, 2012 WL 5449681 (W.D. Wash. Nov. 6, 2012)................................. passim

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,*
    100 F.3d 1443 (9th Cir. 1996) ...............................................................................................19

*Tri Valley CARES v. U.S. Dep't of Energy,*
    671 F.3d 1113 (9th Cir. 2012) ...............................................................................................13

*Turtle Island Restoration Network v. NMFS,*
  340 F.3d 969 (9th Cir. 2003) ................................................................................................10

*United States v. Carlo Bianchi & Co.,*
  373 U.S. 709 (1963) ..............................................................................................................9

*United States v. Easterday,*
  564 F.3d 1004 (9th Cir. 2009) ..............................................................................................9

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council,*
  435 U.S. 519 (1978) ............................................................................................................11

*Vill. of False Pass v. Clark,*
  733 F.2d 605 (9th Cir. 1984) ..............................................................................................10

*W. Watersheds Project v. Kraayenbrink,*
  538 F. Supp. 2d 1302 (D. Idaho 2008) ...............................................................................19

*Washington Toxics Coalition v. EPA,*
  413 F.3d 1024 (9th Cir. 2005) ......................................................................................15, 17

*Western Watersheds Project v. Kraayenbrink,*
  632 F.3d 472 (9th Cir. 2011) ....................................................................................15, 18, 19

*Westlands Water Dist. v. U.S. Dep't of Interior,*
  376 F.3d 853 (9th Cir. 2004) ..............................................................................................10

*Wild Rockies v. Probert,*
  412 F. Supp. 3d 1188 (D. Mont. 2019) ...............................................................................18

STATUTES

5 U.S.C. § 704 ................................................................................................................8, 17, 18
5 U.S.C. § 706 ...................................................................................................................passim
5 U.S.C. § 559 .............................................................................................................................9, 15
16 U.S.C. § 1531 ...................................................................................................................15
16 U.S.C. § 1536(a)(2) ...........................................................................................................2
16 U.S.C. § 1540(g) .......................................................................................................3, 8, 15
42 U.S.C. § 4332(2)(C)(i) .......................................................................................................3

RULES

Fed. R. Civ. P. 26 (a)(1)(B)(i) ...............................................................................................................1
Federal Rule of Civil Procedure 26.................................................................................................1, 14

FEDERAL REGULATIONS

40 C.F.R. § 1500.1 (b) ............................................................................................................................6
40 C.F.R. § 1502.1 ...................................................................................................................................3
50 C.F.R. § 402.02 ...................................................................................................................................2
50 C.F.R. § 402.14 (i)...............................................................................................................................3

## I.    INTRODUCTION

In May 2019, the National Marine Fisheries Service ("NMFS") issued a biological opinion analyzing the effects of hatchery programs in the Willamette River Basin on species listed under the Endangered Species Act ("ESA"), including winter steelhead. Plaintiffs allege that the biological opinion and incidental take statement violate the Administrative Procedure Act ("APA") and NMFS' associated environmental impact statement violates the National Environmental Policy Act ("NEPA"). Plaintiffs also allege that the U.S. Army Corps of Engineers ("Corps") and the U.S. Fish and Wildlife Service ("FWS") have violated Section 7 of the ESA by authorizing, funding, or carrying out aspects of a hatchery program, and that program has jeopardized the continued existence of winter steelhead and resulted in the destruction and adverse modification of the species' critical habitat.

Even though Plaintiffs have raised NEPA and ESA claims, as well as APA claims, all of Plaintiffs' claims are reviewed pursuant to the APA's scope and standard of review. To conduct the appropriate review under the APA's standards, the reviewing court must adjudge the challenged agency action based on the administrative record provided by the agency and not on new information generated during discovery. Indeed, Federal Rule of Civil Procedure 26 expressly exempts "action[s] for review on an administrative record" from the initial disclosure requirement. Fed. R. Civ. P. 26(a)(1)(B)(i). Each of the Federal Defendants in this case (NMFS, FWS, and the Corps) have lodged certified administrative records and those records provide an ample – and the appropriate – basis to adjudicate Plaintiffs' claims.

Nonetheless, on September 3, 2021, Plaintiffs propounded a set of discovery requests on Federal Defendants that included an interrogatory, requests for admission, and requests for production of documents. But, as noted above, discovery is not permitted on the claims before the Court. Moreover, Plaintiffs have failed to comply with the Court's Scheduling Order that required the parties to confer regarding discovery "within 14 days of the Court's resolution of the motion to

complete the records or plaintiff notifying defendants that it does not intend to file a motion to complete the records." Scheduling Order, ECF 19. Therefore, Federal Defendants respectfully request that the Court issue an order confirming that no discovery is permitted in this case. In the alternative, Federal Defendants request that the Court order Plaintiffs to file a motion to modify the Court's Scheduling Order that complies with Civil Local Rule 16-3.

## II.    STATUTORY BACKGROUND

### A.    Endangered Species Act

Section 7(a)(2) of the ESA requires federal agencies ("action agencies") to ensure that any action they authorize, fund, or carry out is not "likely to jeopardize the continued existence" of any listed species "or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). An agency "action" includes "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas." 50 C.F.R. § 402.02.

Where there is an agency action as defined under the ESA, and that action may affect a listed species or designated critical habitat, the action agency must consult with the appropriate "consulting agency" (here, NMFS) to analyze the potential impacts of the action on listed species and any designated critical habitat. *Id.* § 402.14(a). Upon completion of formal consultation, the consulting agency issues a biological opinion, which is the consulting agency's assessment of the likelihood of "jeopardy" to the species and "destruction or adverse modification" of critical habitat from the action agency's action. *Id.* § 402.14(g)-(h). If an agency action is reasonably certain to result in "take" of a listed species, the consulting agency issues an incidental take statement that specifies the amount or extent of the anticipated take and any reasonable and prudent measures it "considers necessary or appropriate" to minimize the impact of the take and corresponding mandatory terms and conditions

that the action agency must comply with to implement such measures. 16 U.S.C. § 1536(b)(4)(C)(i)-(ii); 50 C.F.R. § 402.14(i).

The ESA provides a citizen-suit provision that, in pertinent part, authorizes a civil suit "to enjoin any person, including the United States . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A).

**B.      National Environmental Policy Act**

NEPA requires a federal agency to "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement . . . on . . . the environmental impact of the proposed action." 42 U.S.C. § 4332(2)(C)(i). Where required by the nature of the contemplated federal action, the agency must prepare an Environmental Impact Statement ("EIS") pursuant to NEPA and applicable implementing regulations. *See* 40 C.F.R. § 1502.1 *et seq.*

NEPA does not contain any provision creating a private cause of action for its enforcement. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1179 (9th Cir. 2004).

**C.      The APA and its Interplay with the ESA and NEPA**

The Supreme Court has held that the ESA's citizen-suit provision does not authorize review of all claims for alleged violations of the ESA or its implementing regulations. Rather, the citizen-suit provision only authorizes review of claimed violations asserted against action agencies; it does not authorize review of claimed violations asserted against consulting agencies with regard to their administration of the statute. *See Bennett v. Spear*, 520 U.S. 154, 173-74 (1997). The Supreme Court explained that this is because the citizen-suit provision's "reference to any 'violation' of the ESA cannot be interpreted to include [a consulting agency's] maladministration of the ESA." *Id.* The ESA's citizen-suit provision "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties–both private entities and Government agencies–but is not an

3

alternative avenue for judicial review of the Secretary [of Commerce and/or Interior]'s implementation of the statute." *Id.* at 173. Rather than being authorized under the ESA's citizen-suit provision, "maladministration" claims against a consulting agency are cognizable only under the waiver of sovereign immunity provided by the APA. *Id.* at 174.

What this means here is that, under *Bennett*, Plaintiffs can only maintain ESA-related claims against NMFS under the waiver of sovereign immunity provided by the APA. *Id.*; *see also Protect Our Lakes v. U.S. Army Corps of Eng'rs*, No. 1:13-cv-402-JDL, 2015 WL 732655, at *3-4 (D. Me. Feb. 20, 2015) (challenge to consulting agency's alleged failure to issue an incidental take statement was not authorized for review under the ESA's citizen-suit provision); *Franks v. Salazar*, 816 F. Supp. 2d 49, 58 (D.D.C. 2011) (claims alleging violations of the ESA by FWS "cannot be enforced via the ESA's citizen-suit provision [] because they allege merely a 'maladministration' of the ESA") (citation omitted); *accord Conservation Force v. Salazar*, 753 F. Supp. 2d 29, 33, 35 (D.D.C. 2010) ("the ESA citizen-suit provision d[id] not authorize judicial review of plaintiffs' [APA maladministration] claims" against the consulting agencies), *aff'd*, 699 F.3d 538 (D.C. Cir. 2012). Accordingly, Plaintiffs' APA claims against NMFS are to be decided on the administrative record provided by that agency.

Plaintiffs' claims against the action agencies Corps and FWS, on the other hand, can only be reviewed by this Court under the ESA's citizen-suit provision. However, it is firmly established by Ninth Circuit authority that the nature of those claims is also governed by the APA. This is because while the ESA provides a sovereign immunity waiver to assert a claim for alleged violation of the ESA or its implementing regulations, the statute itself does not provide a scope or standard of review for a court to apply in adjudicating whether or not the defendant agency has either complied with, or violated, the ESA. The Ninth Circuit has repeatedly held that the APA provides the standards that the ESA does not. In particular, like in this case, in *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012) (*en banc*), the plaintiff brought an ESA claim against an action agency under the

ESA's citizen-suit provision. Though it was an ESA citizen-suit case, the Ninth Circuit expressly noted that the action agency's "compliance with the ESA is reviewed under the Administrative Procedure Act ('APA')" and that, "[b]ecause this is a record review case, we may direct that summary judgment be granted to either party based upon our review of the administrative record." *Id.* at 1017 (citations omitted). The *en banc* panel's ruling in *Karuk Tribe* should be dispositive of Plaintiffs' request to pursue discovery here.

As to claims asserting that agency decisions were made in violation of NEPA, it is well-established in the Ninth Circuit that such claims are to be reviewed under the APA. *See Native Ecosystems Council v. U.S. Forest Serv.,* 428 F.3d 1233, 1238 (9th Cir. 2005) ("Because NFMA and NEPA do not provide a private cause of action to enforce their provisions, agency decisions allegedly violating NFMA and NEPA are reviewed under the Administrative Procedure Act"); *Bair v. Cal. Dep't of Transp.,* 982 F.3d 569, 577 (9th Cir. 2020) (citing *Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1007 (9th Cir. 2020)); *Cetacean Cmty. v. Bush*, 386 F.3d at 1179 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Plaintiffs' NEPA claims against NMFS are therefore likewise governed by the APA and must be decided upon the administrative record lodged with this Court and served upon Plaintiffs.

Because all of Plaintiffs' claims in this case are governed by the APA, this Court's role is to determine whether the agencies' action (or failure to act) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In carrying out this role, Congress has directed that this Court "shall" consider the administrative records proffered by the defendant agencies. *Id.* § 706. Congress has made no provision for discovery or generation of extra-record evidence. Indeed, in APA record-review cases such as this, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, the court's role "is to determine whether or not as a matter of law *the evidence in the administrative record permitted the agency to make the decision it did.*" *Id.* (emphasis added).

5

### III.    FACTUAL BACKGROUND

In their amended complaint for declaratory and injunctive relief, Plaintiffs allege that: (1) NMFS has violated the APA because its biological opinion does not comply with 50 C.F.R. § 223.203(b)(5)(i)(E)-(F), and its incidental take statement fails to include reasonable and prudent measures necessary and appropriate to minimize the impact of incidental take on winter steelhead; (2) NMFS has violated NEPA because its EIS failed to include information sufficient to satisfy the requirements of 40 C.F.R. § 1500.1(b) and "fail[ed] to take a 'hard look' at the consequences and effects on winter steelhead caused by the hatchery summer steelhead program"; and (3) the Corps and FWS have violated Section 7 of the ESA by authorizing, funding, or carrying out aspects of the hatchery summer steelhead program, and that program has jeopardized the continued existence of winter steelhead in the Willamette Basin and resulted in the destruction and adverse modification of the species' critical habitat. ECF 20 ¶ 45-53.

The parties submitted a joint proposed case management schedule to the Court stating that Federal Defendants will serve the administrative records from the agencies on June 25, 2021, and that, if Plaintiffs have any concerns regarding whether those records are complete, Plaintiffs may file a motion to complete the records by July 9, 2021.[1] Joint Proposed Case Schedule, ECF 18 at 3. The parties also agreed in the joint proposed case management schedule that "[w]ithin 14 days of the Court's resolution of any motion to complete the [administrative] records or once Riverkeeper notifies Defendants that Riverkeeper does not intend to file a motion to complete the records, the parties shall meet and confer on the issue of discovery", as the parties disagreed about whether discovery was

---

[1] Plaintiffs requested that this deadline be extended to July 23, 2021, as to NMFS' administrative record. Federal Defendants agreed and the parties filed a joint stipulation with the Court (Joint Stipulation Re Case Schedule, ECF 26), which was granted. Scheduling Order, ECF 27.

allowed in this case. *Id.* The Court adopted the proposed case management schedule. Scheduling Order, ECF 19.

In accordance with the Court's Scheduling Order, Federal Defendants sent all three of Federal Defendants' administrative records to the Court, Plaintiffs, and Defendant-Intervenor the State of Oregon Department of Fish and Wildlife on June 24, 2021. *See* Notice of Lodging, ECF 24. Plaintiffs and Defendant-Intervenor subsequently requested that certain documents be added to NMFS' administrative record. Federal Defendants agreed to add some of the documents, but did not agree to add others. *See* Email Exchange between Kaitlyn Poirier and Peter Frost Re: Willamette Hatcheries II - Documents, Attachment 1 at 2-4. Based on Federal Defendants' response, Plaintiffs decided to forego filing a motion regarding the completeness of the record on July 22, 2021. *Id.*

On August 5, 2021, Federal Defendants submitted the supplement to NMFS' administrative record. Notice of Lodging, ECF 28. Plaintiffs' counsel then sent an email stating that "Plaintiffs are reviewing the records to determine if we need to confer as to any discovery, per Judge Aiken's scheduling order." Attachment 1 at 1. If Plaintiffs intended to seek discovery, the Court's Scheduling Order required them to confer with Federal Defendants within 14 days of the date when Plaintiffs elected to forego filing a motion to complete the record or, at the latest, within 14 days of Federal Defendants lodging the supplement to the administrative record (August 5 or 19, respectively). *See* Scheduling Order, ECF 19. Plaintiffs did not confer regarding discovery. Rather, they propounded discovery September 3, 2021.

## IV.    ARGUMENT

### A.    Plaintiffs' Claims Are Subject to the Scope and Standard of Review of the APA

As explained above, Plaintiffs' claims against NMFS are solely authorized for review under the waiver of sovereign immunity provided by the APA. Specifically, Plaintiffs allege NMFS is "maladministering" the ESA, by its biological opinion not complying with a regulation and by issuing

7

an incidental take statement that fails to include reasonable and prudent measures necessary to minimize the impact of incidental take. ECF 20 ¶ 46-50. Indeed, the biological opinion is a "final agency action" authorized for review under the APA (5 U.S.C. § 704) and the test adopted by the Supreme Court in *Bennett v. Spear*, 520 U.S. at 177-78.

Plaintiffs also allege that NMFS violated NEPA by preparing a deficient EIS, a claim that is not brought pursuant to a private right of action and thus must be adjudicated under the APA (just like Plaintiffs' challenge to the biological opinion and incidental take statement). *See, e.g., Bair*, 982 F.3d at 577; *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1150 (D. Or. 2014) ("Given that NEPA does not have a citizen suit provision, plaintiffs properly bring their claims under the APA."). The agency's issuance of a Record of Decision serves as the final agency action permitting judicial review under the APA's waiver of sovereign immunity. *See Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1118 (9th Cir. 2010).

Plaintiffs' claims against the Corps and FWS, on the other hand, are brought pursuant to a private right of action: the ESA's citizen suit provision. Nonetheless, these claims are also adjudicated pursuant to the APA. While the ESA's citizen-suit provision waives sovereign immunity to bring a claim against an agency, it provides no standards by which a court should adjudicate such a claim. *See* 16 U.S.C. § 1540(g). Where, as is true of the ESA, Congress has authorized a private right of action against an agency but has not "set[] forth the standards to be used or the procedures to be followed . . . consideration is to be confined to the administrative record and [] no *de novo* proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) (citations omitted). The Supreme Court's holding in *Carlo Bianchi* mirrors the APA, which requires courts to review agency action based on "the whole record" unless a later-enacted statute "expressly" supersedes or modifies that provision. 5 U.S.C. §§ 559, 706. The ESA does not expressly supersede or modify that provision of the APA. The Ninth Circuit similarly has noted "that challenges to agency actions are subject to the APA's

8

judicial review standard unless Congress specifies a contrary intent." *Ninilchick Traditional Council v. United States*, 227 F.3d 1186, 1193 (9th Cir. 2000).

An *en banc* panel of the Ninth Circuit expressly found that an action agency's "compliance with the ESA is reviewed under the Administrative Procedure Act ('APA')." *Karuk Tribe*, 681 F.3d at 1017. As an *en banc* decision, *Karuk Tribe* provides the controlling law of this Circuit. *United States v. Easterday*, 564 F.3d 1004, 1010 (9th Cir. 2009); *Barapind v. Enomoto*, 400 F.3d 744, 751 n.8 (9th Cir. 2005) (en banc). The *en banc* panel's ruling is in accord with a litany of Ninth Circuit and other Circuit[2] rulings issued over more than three decades in which the court has found that claims brought pursuant to the ESA's citizen-suit provision are governed by the APA's standards. *See, e.g., San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) ("Neither the ESA nor NEPA supply a separate standard for our review, so we review claims under these Acts under the standards of the APA"); *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) ("The ESA does not provide its own standard of judicial review, so we evaluate the [biological opinion] under the APA's arbitrary or capricious standard."); *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016 (9th Cir. 2012) ("We review Reclamation and FWS's compliance with the ESA . . . under the standard set forth in the APA") (citation omitted); *Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1086 (9th Cir. 2004) ("Because neither NEPA nor the ESA contains an express provision for judicial review, our review of agency decision-making under these statutes is governed by the judicial review provisions of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A)"); *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 865 (9th Cir. 2004) ("NEPA and ESA compliance is reviewed under the Administrative Procedure Act, 5 U.S.C. § 706 *et seq.*") (citations omitted); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1205 (9th Cir. 2004) ("Because the statutes under which Sausalito

---

[2] *See Rio Grande Silvery Minnow v. U.S. Bureau of Reclamation*, 601 F.3d 1096, 1105 n.3 (10th Cir. 2010) ("The APA governs judicial review of agency action challenged through the ESA citizen-suit provision").

9

seeks to challenge administrative action [including the ESA] do not contain separate provisions for judicial review, our review is governed by the APA"); *Turtle Island Restoration Network v. NMFS*, 340 F.3d 969, 973 (9th Cir. 2003) ("Judicial review of administrative decisions under the ESA is governed by Section 706 of the Administrative Procedure Act ('APA'). 5 U.S.C. § 706"); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.,* 273 F.3d 1229, 1235 (9th Cir. 2001) ("Judicial review of administrative decisions involving the ESA is governed by section 706 of the APA. 5 U.S.C. § 706"); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990) ("Judicial review of administrative decisions involving the ESA is governed by section 706 of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706"); *Sierra Club v. Marsh*, 816 F.2d 1376, 1385-87 (9th Cir. 1987) (reviewing ESA citizen-suit claim under APA's scope and standard of review); *Vill. of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984) ("Because ESA contains no internal standard of review, section 706 of the [APA], 5 U.S.C. § 706, governs review of the Secretary's actions.").[3]

In sum, controlling Supreme Court and Ninth Circuit authority require that this Court utilize the APA's standards when resolving all of Plaintiffs' claims, both those against NMFS that are authorized for review under the APA, as well as those against the Corps and FWS that are authorized for review under the ESA's citizen-suit provision. Those APA standards do not allow for discovery.

## B.    Discovery Is Not Available In this APA Record Review Case

In the APA, Congress expressly directed that, in making the necessary determinations in cases authorized for review, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. In the seminal case of *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435

---

[3] The ESA's legislative history further supports the Ninth Circuit's recurring holdings that ESA citizen-suit claims are governed by the APA. Congress was well aware that it was adopting the APA's judicial review provision when it decided to adopt the House's version of the ESA instead of the Senate's version. *See* H.R. Conf. Rep. No. 93-740, at 25 (Dec. 19, 1973), reprinted in 1973 U.S.C.C.A.N. 3001, 3003 ("The Senate bill followed in part and differed in part from the otherwise controlling [APA]; the House bill did not discuss the issue and thereby adopted the APA.").

U.S. 519 (1978), the Supreme Court emphasized that judicial review under the APA is ordinarily limited to the administrative record compiled by the agency:

> We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the [agency] decision must be vacated and the matter remanded to [the agency] for further consideration.'

*Id.* at 549, quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam). Years prior, the Supreme Court had held that "the focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *see also Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (noting that "review is to be based on the full administrative record that was before the Secretary at the time he made his decision") (footnote omitted).

The Ninth Circuit similarly has recognized that "[w]hen a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *see also Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (noting that a reviewing court ordinarily "may not consider information outside of the administrative record"). More recently, the Ninth Circuit admonished a district court in companion ESA rulings for allowing and considering extra-record declarations where, like Plaintiffs in this case, the plaintiffs had asserted both APA claims against the consulting agency and ESA citizen-suit claims against the action agency. *Jewell*, 747 F.3d at 601-04; *Locke*, 776 F.3d at 991-93, 996, 999-1000, 1009. In a lengthy discussion, the Ninth Circuit reminded district courts that judicial review in that class of cases "is limited to 'the administrative record already in existence, not some new record made initially in the reviewing court.'" *Jewell*, 747 F.3d at 602 (quoting *Camp*, 411 U.S. at 142); *Locke*, 776 F.3d at 992; *accord Karuk Tribe*, 681 F.3d at 1017 (*en banc* panel stating that ESA citizen-suit claim was "a record review case" and that summary

judgment was available "based upon [the court's] review of the administrative record"). The Ninth Circuit explained that "[t]here is a danger when a reviewing court goes beyond the record before the agency," because "[w]hen a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Jewell*, 747 F.3d at 602 (citations omitted). The Ninth Circuit has further explained that limiting review to the facts in existence at the time of the conduct in question also prevents improper consideration of "[p]ost-decision information . . . as a new rationalization either for sustaining or attacking an agency's decision." *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d 1163, 1176 n.16 (9th Cir. 2004) (citation omitted).

Though the Ninth Circuit has identified four "narrow exceptions" to the APA's whole record rule, they are not implicated here. *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). First, Plaintiffs declined to file a motion challenging the completeness of the administrative records and the deadline to do so has passed. Attachment 1 at 2; Scheduling Order, ECF 27. Second, and more broadly, Plaintiffs are not attempting to invoke any of the four recognized "narrow exceptions" to the record rule here; they are attempting to jettison APA record review altogether. Indeed, it is critical not to confuse the Ninth Circuit's four "narrow" exceptions for extra-record materials with abandoning record review altogether in favor of pursuing unlimited discovery, which would be a wholly different – and inappropriate – endeavor.[4] Having declined to show that any extra-record documents "are necessary to adequately review" the agency actions/inactions and fit into one of the four narrow exceptions, Plaintiffs are not now entitled to abandon record review altogether and pursue unlimited discovery. *See, e.g., Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010)

---

[4] For instance, even the recognized exception for extra-record information to consider whether an agency has considered all relevant factors does not apply where a party is attempting to admit post-decisional information, as would be generated during discovery. *Tri Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130-31 (9th Cir. 2012).

(requiring plaintiffs to "show" the "gaps or holes" in the record); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) ("The [plaintiff] makes no showing that the district court needed to go outside the administrative record to determine whether the [agency] ignored information …").

Consistent with this Ninth Circuit precedent, this Court has found that disallowing discovery and prohibiting review beyond the administrative record in a NEPA action to be appropriate. *See Bark*, 2 F. Supp. 3d at 1152-53 (noting that "the narrowness of the APA action for judicial review weighs heavily against discovery" and finding that Plaintiffs did not sufficiently show that they meet any of the Ninth Circuit's "narrowly construed exceptions to the APA record rule in order to justify their discovery requests") (citation omitted).

### C. Plaintiffs Cannot Show that Discovery is Available on Either their APA Claim or their ESA Citizen-Suit Claims

Plaintiffs can be expected to argue that they are entitled to pursue discovery because they assert claims under the ESA's citizen-suit provision against the Corps and FWS. These arguments lack merit, as explained below. And, in any event, Plaintiffs' claims against the Corps and FWS under the ESA's citizen-suit provision cannot justify propounding discovery on NMFS, as Plaintiffs' claims against NMFS involve allegations that the agency has improperly administered its decisional responsibilities in issuing its biological opinion and EIS, both of which are only subject to suit under the APA, not the ESA's citizen-suit provision.[5]

### 1. The APA's Scope of Review and Standard of Review Are Inseparable

Plaintiffs may argue that this Court can apply only the APA's *standard* of review to their ESA claim, and not its *scope* of review, as some district courts have opined. Such a distinction is contrary to

---

[5] Federal Defendants intend to object to Plaintiffs' discovery requests because, in addition to discovery not being allowed at all in this record review case, some of the requests relate to Plaintiffs' APA claim against NMFS and others are not relevant under Federal Rule of Civil Procedure 26(b)(1).

the plain language of the APA and controlling precedent, however, which demonstrate that a reviewing court cannot properly apply the APA's standard of review if it does not adhere to its scope of review. First, the plain language of the APA states:

> [STANDARD OF REVIEW:] [T]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .
>
> [SCOPE OF REVIEW:] *In making the foregoing determinations*, the court *shall* review the whole record or those parts of it cited by a party.

5 U.S.C. § 706 (emphasis added).

Thus, the APA plainly directs a reviewing court to use the agency's administrative record (scope of review) to determine whether its action is arbitrary and capricious or not in accordance with law (standard of review). A court does not follow this direction if it determines whether the challenged agency action is arbitrary and capricious or not in accordance with law based on extra-record evidence generated after the fact through discovery. ESA citizen-suit claims are no exception, as other courts have held. *See, e.g.*, *350 Montana v. Bernhardt*, 443 F. Supp. 3d 1185, 1201 (D. Mont. 2020); *Pac. Rivers Council v. Shepard*, No. 03:11-CV-442-HU, 2012 WL 950032, at *3 (D. Or. Mar. 20, 2012) (finding that "the APA standard of review governs a plaintiff's citizen suit for failure to consult under ESA § 7," reciting the APA's scope of review, and noting "[t]he ESA citizen-suit provision does not provide otherwise. 16 U.S.C. § 1540(g)"); *Sierra Club v. McLerran*, No. C11-1759RSL, 2012 WL 5449681, at *2, 4 (W.D. Wash. Nov. 6, 2012) (denying the plaintiff's request for a holding of *de novo* judicial review and for discovery). Indeed, as discussed previously, the ESA could not modify the APA unless it did so "expressly" (5 U.S.C. § 559), and it contains no such modification, (*see* 16 U.S.C. § 1531, *et seq.*).

Second, controlling Supreme Court authority firmly establishes that a court cannot properly separate the APA's scope of review from its standard of review. For instance, in the seminal case of *Overton Park*, the Court required the district court to use the APA's "arbitrary and capricious" standard and base its review "on the full administrative record that was before the [agency] at the time [it] made

14

[its] decision." 401 U.S. at 416-20. Later, in *Camp v. Pitts*, the Court expressly stated that, in applying the APA's arbitrary and capricious standard, "the focal point for judicial review should be the administrative record already in existence, *not some new record made initially in the reviewing court*." 411 U.S. at 142 (emphasis added). And, again in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), the Court held that "[t]he task of the reviewing court is to apply the appropriate APA *standard of review*, 5 U.S.C. § 706, to the agency decision *based on the record the agency presents*." *Id*. at 743-44 (emphasis added) (citation omitted). This controlling authority conclusively demonstrates that the APA's standard of review is not properly applied using a record generated after the fact in the reviewing court.

### 2. *Karuk Tribe* Is the Law of this Circuit, Consistent with Supreme Court Authority and More than Three Decades of Ninth Circuit Authority

Plaintiffs can be expected to rely primarily – if not entirely – on two Ninth Circuit decisions, *Washington Toxics Coalition v. EPA*, 413 F.3d 1024 (9th Cir. 2005), and *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011), as purportedly sanctioning their discovery requests. They do not.

Simply stated, *Karuk Tribe*, 681 F.3d 1006, as an *en banc* decision, provides the controlling law of this Circuit and should be dispositive of any reliance by Plaintiffs on *Washington Toxics* or *Kraayenbrink* (which also predate *Karuk Tribe*). In fact, *Karuk Tribe* was in accord with no less than 11 Ninth Circuit rulings that ESA claims are governed by the APA's standards, as noted above. As neither *Washington Toxics* nor *Kraayenbrink* were decided *en banc*, even if one or both decisions had held that ESA citizen-suit claims are not governed by the APA's standards, neither decision could overrule the 35 years of contrary Ninth Circuit authority. *See In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) (a panel of the Ninth Circuit "may not overrule a decision of a previous panel; only a court *in banc* has such authority") (citation omitted). And, of course, *Washington Toxics* and *Kraayenbrink* could not ever overrule the Supreme Court, which has firmly established that APA claims are to be reviewed on the administrative record, as the APA expressly states.

In reality, the Ninth Circuit did not rule in either *Washington Toxics* or *Kraayenbrink* that ESA citizen-suit claims are not record review claims or are subject to discovery. Indeed, it is inconceivable that the panel in either *Washington Toxics* or *Kraayenbrink* would have attempted to overrule more than three decades of contrary Ninth Circuit precedent silently, without even mentioning a single one of those decisions, or a single Supreme Court authority on record review. This Court should take particular note of the fact that the word "discovery" does not even appear in either opinion. That is because the Ninth Circuit did not consider in either case a request for discovery. In *Washington Toxics*, the court considered whether the plaintiffs had stated a claim upon which relief could be granted under the ESA citizen-suit provision. A defense had been raised that the plaintiffs had not so stated a claim because they had not identified a discrete "agency action" that triggered the consultation requirement of ESA Section 7, but rather were attempting to assert an improper programmatic attack on the Environmental Protection Agency's pesticide registration program for alleged failure to consult.

The Ninth Circuit rejected the defense, finding that the plaintiffs had, in fact, stated a claim for failure to consult under the ESA's citizen-suit provision. Because the court found that the ESA authorized review of the claim, it found that the APA did not. *Wash. Toxics*, 413 F.3d at 1034. The court noted that "suits to compel [action] agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA." *Id.* That statement did not break new ground. It is consistent with the Supreme Court's holding in *Bennett* – as discussed above – and the plain language of the APA, which states that it authorizes review of "final agency action *for which there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added). In short, *Washington Toxics'* holding that an alleged violation of the ESA by an action agency is authorized for review under the ESA's citizen-suit provision, and not the APA's waiver of immunity, is unremarkable.

The statement in *Washington Toxics* that, "[b]ecause this substantive statute [*i.e.*, the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims," is

correct to the extent that the court meant "*authorize*" instead of "*govern.*" 413 F.3d at 1034. As explained above, more than three decades of preceding and subsequent Ninth Circuit authority – including the *en banc* decision in *Karuk Tribe*, 681 F.3d at 1017 – precisely establishes that claims authorized under the ESA citizen-suit provision *are* governed by the APA. The *Washington Toxics* opinion includes no mention, much less any discussion, of the extensive body of contrary authority. Nor does the opinion discuss at all whether the ESA citizen-suit claim that it found the plaintiffs had stated against EPA would be decided on an administrative record. That is because the court was not considering the scope of review of the claim, but rather whether "the ESA citizen suit provision creates an express, adequate remedy" for the plaintiffs' claim. *Wash. Toxics*, 413 F.3d at 1034. At bottom, *Washington Toxics* is not the law of this Circuit on the scope of review for ESA claims – *Karuk Tribe* is – and, in any event, it does not establish that ESA citizen-suit claims are not record review claims but rather are to be decided based on *de novo* fact-finding following discovery.

Nor can *Kraayenbrink* stand for this proposition, overturning 35 years of controlling law, including the subsequent *en banc* ruling in *Karuk Tribe*, 681 F.3d at 1017. *Kraayenbrink* cites a single authority for its administrative record holding: *Washington Toxics*. With similarly limited discussion, *Kraayenbrink* purports to follow *Washington Toxics* for the proposition that "the APA applies only where there is 'no other adequate remedy in a court,' 5 U.S.C. § 704, and—because the ESA provides a citizen suit remedy—the APA does not apply in such actions." *Kraayenbrink*, 632 F.3d at 497. As explained above, it is correct that the APA provides a waiver of sovereign immunity only where "there is no other adequate remedy in a court" (5 U.S.C. § 704) and, hence, not where the ESA does. But to say that *the APA's standards* do not apply to a claim asserted under the ESA citizen-suit provision runs contrary to 35 years of Ninth Circuit authority, as shown above. None of this authority is mentioned in *Kraayenbrink*, much less distinguished or overruled, nor could it be. Like *Washington Toxics*, *Kraayenbink* is not the law of this Circuit on the scope of review for ESA claims and, in any event,

should not stand for the proposition that ESA citizen-suit claims are not record review claims, but rather are to be decided based on *de novo* fact-finding following discovery. *Bernhardt*, 443 F. Supp. 3d at 1201 ("this Court has consistently concluded that [*Kraayenbrink*] did not eliminate the administrative record limitation in ESA cases"); *All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1196-97 (D. Mont. 2019) (same); *accord Pac. Rivers Council*, 2012 WL 950032, at \*3; *McLerran*, 2012 WL 5449681, at \*2, 4.

Indeed, in *Kraayenbrink*, the court ultimately ruled that, *in addition to considering the administrative record*, "we may consider evidence outside the administrative record." 632 F.3d at 497. Specifically, the court approved of the district court's consideration of extra-record declarations submitted by the plaintiff in addition to the administrative record because they showed information that "the [agency] failed to consider." *Id.* at 498. The consideration of these extra-record declarations is consistent with one of the four narrow exceptions to the APA's whole record rule that have been recognized by the Ninth Circuit for at least 25 years —materials necessary to determine whether the agency has considered all relevant factors and has explained its decision. *See, e.g., Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *see also Camp*, 411 U.S. at 142–43 ("If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was not to hold a *de novo* hearing but, as contemplated by *Overton Park*, to obtain *from the agency*, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary") (emphasis added)); *Friends of the Payette v. Horseshoe Bend Hydroelec. Co.*, 988 F.2d 989, 997 (9th Cir. 1993) (same).

It is important to recognize that allowing consideration of extra-record declarations is a wholly different endeavor than jettisoning the APA altogether in favor of unfettered discovery and *de novo* fact-finding. Indeed, the court did not rule in *Kraayenbrink* that discovery was appropriate, and the parties never engaged in discovery. *See W. Watersheds Project v. Kraayenbrink*, 538 F. Supp. 2d 1302, 1322-

24 (D. Idaho 2008); *Kraayenbrink*, 632 F.3d at 497. Viewed in the context of the more than 30 years of Ninth Circuit and Supreme Court authority discussed above, *Kraayenbrink* should be viewed as "limited in scope" to the established principles of administrative law, and not as a radical departure from them. *See McLerran*, 2012 WL 5449681, at *2, 4. Rather, *Kraayenbrink* should be viewed as merely "ratif[ying] the district courts' use of discretion . . . to supplement the record." *Id.* That is a "far cry" from allowing parties to take discovery, authorizing district courts to "engage in *de novo* review," or rendering "the APA's standards [an] inapt guideline[]." *Id.*

## V.    PLAINTIFFS' DISCOVERY REQUESTS WERE SERVED IN VIOLATION OF THE COURT'S SCHEDULING ORDER

This Court should hold that Plaintiffs' discovery requests as seeking information outside of the permissible scope of review for the reasons explained above. But. even if such discovery were deemed permissible, Plaintiffs' requested discovery is untimely under the Court's Scheduling Order and Plaintiffs should be required to file a motion to amend that Order in compliance with Civil Local Rule 16.3.

As mentioned previously, the parties filed a joint proposed case schedule with the Court that made clear that the parties disagreed as to whether any discovery was appropriate in this case. Joint Proposed Case Schedule, ECF 18 at 3. In that submission, the parties stipulated that "[w]ithin 14 days of the Court's resolution of any motion to complete the [administrative] records or once Riverkeeper notifies Defendants that Riverkeeper does not intend to file a motion to complete the records, the parties shall meet and confer on the issue of discovery." *Id.* The Court entered a Scheduling Order adopting that provision. Scheduling Order, ECF 19. Indeed, even after Federal Defendants filed the administrative record supplement, Plaintiffs' counsel acknowledged that the parties would need to confer to comply with the Court's scheduling order if Plaintiffs intended to propound discovery. *See* Attachment 1 at 1 ("Plaintiffs are reviewing the records to determine if we need to confer as to any discovery, per Judge Aiken's scheduling order.").

19

Yet Plaintiffs did not confer before they propounded discovery on September 3, 2021. And, under any possible interpretation of the Court's Scheduling Order, the time for Plaintiffs to confer regarding discovery has expired. The Scheduling Order required Plaintiffs to confer with Federal Defendants within 14 days of when Plaintiffs decided to forego filing a motion to complete the record (by August 5) or, at the latest, within 14 days of when Federal Defendants submitted the administrative record supplement to the Court (by August 19). *See* Scheduling Order, ECF 19.[6] Plaintiffs did not do so.

Under the Court's Scheduling Order in this case, the time for conferring regarding discovery in this litigation has passed. Moreover, even if the Court allows discovery in this case, Plaintiffs also did not confer in accordance with Rule 26 prior to propounding discovery. Therefore, should the Court decide to permit discovery in this record review case, Federal Defendants respectfully request that the Court order Plaintiffs to file a motion to modify the Court's Scheduling Order in compliance with Civil Local Rule 16-3, including presenting good cause as to why that Scheduling Order should

---

[6] Notably, in previous litigation regarding the same hatcheries program at issue in this case, Plaintiffs and Federal Defendants (the Corps and Corps management) proposed a detailed schedule for resolving any discovery-related issues. *Willamette Riverkeeper v. U.S. Army Corps of Eng'rs*, 6:17-cv-00801-MC, ECF 13. Under the agreed upon approach, Federal Defendants would first provide the Court and Plaintiffs with an administrative record. *Id.* ¶ 5. Plaintiffs could then file a motion related to the sufficiency of the record. *Id.* ¶ 6. Within 14 days of a Court Order on Plaintiffs' record motion, if any, the parties would meet and confer on discovery issues. *Id.* ¶ 7. Finally, the agreed schedule provided that "[i]f the parties continue[d] to dispute whether discovery is appropriate, any motions regarding discovery shall be filed within 21 days of the parties' deadline to meet and confer on discovery." *Id.* The Court adopted this schedule at the parties' Rule 16 Conference. *Id.*, ECF 14. Rather than following the schedule set by the Court's Order, Plaintiffs propounded discovery before: (1) Federal Defendants filed the administrative record; (2) Plaintiffs filed any motion challenging the sufficiency of the administrative record; or (3) the expiration of the parties' 14-day discovery conferral period. *Id.*, ECF 22 at 1-2. Moreover, Plaintiffs filed a Motion for Discovery and/or Inspection before the conclusion of the 14-day conferral period. *Id.*, ECF 20. Although Plaintiffs were not admonished for their disregard for the Court's Order previously, given Plaintiffs' pattern of behavior and the disadvantage this presents for Federal Defendants, the Court should do so now.

be changed. *See* LR 16-3; *Barringer v. Clackamas Cnty.*, Case No.: 3:09-CV-00068-AC, 2012 WL 1574817 (D. Or. May 3, 2012).

## VI.     CONCLUSION

For the foregoing reasons, the Court should issue an order confirming that no discovery is permitted in this case.[7] In the alternative, Federal Defendants request that the Court order Plaintiffs to file a motion to modify the Court's Scheduling Order that complies with Civil Local Rule 16-3.

Dated: October 5, 2021

> JEAN E. WILLIAMS, Acting Assistant Attorney General
> SETH M. BARSKY, Section Chief
> S. JAY GOVINDAN, Assistant Section Chief
>
> */s/ Kaitlyn Poirier*
> KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
> U.S. Department of Justice
> Environment & Natural Resources Division
> Wildlife & Marine Resources Section
> Ben Franklin Station, P.O. Box 7611
> Washington, D.C. 20044-7611
> Telephone: (202) 307-6623
> Fax: (202) 305-0275
> Email: kaitlyn.poirier@usdoj.gov
>
> */s/ Mark A. Pacella*
> MARK A. PACELLA, Trial Attorney (DC Bar # 470485)
> U.S. Department of Justice
> Environment & Natural Resources Division
> Natural Resources Section
> Ben Franklin Station, P.O. Box 7611
> Washington, D.C. 20044-7611
> Telephone: (202) 514-3126
> Facsimile: (202) 305-0506
> Email: mark.pacella@usdoj.gov
>
> Attorneys for Defendants

---

[7] The parties have filed a stipulation extending any deadline for Federal Defendants to respond to Plaintiffs' discovery requests. Stipulation, ECF 29.

21

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2021, a true and correct copy of the above document was electronically filed with the Clerk of Court using CM/ECF. Copies of the Motion will be served upon interested counsel via the Notices of Electronic Filing that are generated by CM/ECF.

/s/ *Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 307-6623
Facsimile: (202) 305-0275
Email: kaitlyn.poirier@usdoj.gov

Attorney for Defendants