ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

MEREDITH L. FLAX, Deputy Section Chief
NICOLE M. SMITH, Assistant Section Chief
KIERAN F. O'NEIL, Trial Attorney (AK Bar No. 2311132)
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone: (202) 598-0409
Fax: (202) 305-0275
Email: Kieran.O'Neil@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLAMETTE RIVERKEEPER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br> *Federal Defendants*, <br><br> and <br><br> OREGON DEPARTMENT OF FISH AND WILDLIFE, <br><br> *Defendant-Intervenor.* | Case No. 6:21-cv-00034-AA <br><br> **FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF** |

**INTRODUCTION**

Plaintiffs' motion for relief reaches well beyond any remedy that is necessary to address the minor errors this Court found with the National Marine Fisheries Service's ("NMFS") 2019 Biological Opinion ("BiOp"), and the relief threatens to intrude on expert agency decision-making. Despite the limited scope of the Court's Opinion and Order identifying discrete and narrow errors in NMFS's BiOp, Opinion and Order, Dkt. No. 71 at 28–65, Plaintiffs seek complete "cessation of summer steelhead releases into the North Santiam River in the period before NMFS prepares any new BiOp, and the Court determines the agency's analysis is lawful." Pls.' Mot. for Relief, Dkt. No. 96 ("Pls.' Br.") at 1; *id.* at 22. This requested relief is prophylactic, supervisory, and inappropriately broad, and the Court should deny Plaintiffs' motion for relief accordingly. Instead, the Court should remand the BiOp without vacatur.

**FACTUAL BACKGROUND**

This matter arises out of Plaintiffs' challenge to Federal Defendants' authorization of the Oregon Department of Fish and Wildlife's ("ODFW") summer steelhead hatchery program and approval of its Hatchery and Genetic Management Plan ("HGMP") on the Upper Willamette River. *See* Pls.' Compl., Dkt. No. 1. In the underlying litigation, Plaintiffs alleged that the U.S. Army Corps of Engineers ("Corps") and the U.S. Fish and Wildlife Service ("FWS") violated the Endangered Species Act ("ESA") by funding and facilitating the release of summer steelhead, which Plaintiffs allege cause harm to wild winter steelhead in the Upper Willamette River, a distinct population unit of salmonids listed as threatened under the ESA. *Id.* ¶¶ 44–49; Pls.' Mot. Summ. J., Dkt. No. 49 at 1. Plaintiffs further alleged that NMFS failed to properly consult on ODFW's and the Corps' proposed HGMP, and therefore violated the ESA and the National Environmental Policy Act ("NEPA"). Pls.' Compl. ¶¶ 44–52; Pls.' Mot. Summ. J. at 1.

On January 21, 2025, the Court held that Plaintiffs lacked standing to pursue claims against

FWS and the Corps, and that Plaintiffs' NEPA claim against NMFS lacked merit. Dkt. No. 71 at 21–23, 77. The Court further concluded that Plaintiffs properly challenged NMFS's 2019 BiOp under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704; Dkt. No. 71 at 24, and proceeded to grant in part and deny in part Plaintiffs' motion for summary judgment on their claims regarding the BiOp. Dkt. No. 71 at 24–77. Reserving the issue of remedy for further proceedings, the Court concluded that "vacatur [of the BiOp] is inappropriate." *Id.* at 78. The Court directed the parties to meet and confer and to apprise the Court of any agreement and suggestion regarding remedy proceedings. *Id.* at 79.

After the Court's ruling, NMFS and the National Oceanic Atmospheric Administration ("NOAA") promptly and proactively began taking the necessary steps to address the Court's concerns with aspects of its BiOp, in accordance with the Court's Opinion and Order. *See* Declaration of Nancy Munn, Assistant Regional Administrator for NOAA's Interior Columbia River Branch Office, ¶¶ 2, 5–9 ("Munn Decl."); Ex. 1 (August 15, 2025 internal NOAA meeting invitation to discuss the BiOp); Ex. 2 (September 10, 2025 email from Kelly Reis, ODFW, to Courtney Hann, NOAA, submitting new information relevant to NMFS's updated analysis). NMFS is currently engaging in the ESA consultation process to revise and update its BiOp, including: (1) evaluating baseline effects of degraded habitat on winter steelhead eggs; (2) properly considering competition effects between summer and winter steelhead; (3) fully considering displacement effects as a component of competition between juveniles; (4) capturing the combined effects of climate change on habitat with other factors; and (5) considering whether gene flow can be managed to rates below 2%. *See* Munn Decl. ¶¶ 5–7. This revised analysis assumes there are no imminent changes to ODFW's operation of the summer steelhead hatchery program. *Id.* ¶ 8. NMFS intends to issue this revised BiOp by August 28, 2026, subject to constraints on agency resources. *Id.* ¶ 9.

FEDERAL DEFENDANTS'
RESPONSE IN OPPOSITION                      3

After several months of Court-mediated negotiations between Plaintiffs and ODFW regarding the summer steelhead hatchery program, *see* Dkt. Nos. 81, 84, 88, 90, the parties opted to brief the issue of remedy. *See* Dkt. Nos. 92, 94. On February 6, 2026, Plaintiffs filed their motion for relief requesting an "interim injunction" ordering ODFW to cease summer steelhead releases into the North Santiam River until NMFS issues a new BiOp and the Court finds the BiOp lawful. Pls.' Br. at 1, 6, 22.

## REMEDY STANDARD

Because this case was brought pursuant to the judicial review provision of the APA, 5 U.S.C. § 702, the legally appropriate remedy is governed by administrative law principles. *See Bennett v. Spear*, 520 U.S. 154, 174–79 (1997) (holding that claims for the alleged "maladministration of the ESA[,]" including claims that a BiOp is "arbitrary [and] capricious" and does not comply with the ESA, must be brought under the APA, not the ESA citizen-suit provision). Where, as here, "the record before the agency does not support the agency action, [] the agency has not considered all relevant factors, or [] the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Accordingly, the Court "should not compensate for the agency's dereliction by undertaking its own inquiry into the merits, but should remand to the agency for further proceedings." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014) (citation modified); *see also Immigr. & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (in APA cases, the reviewing court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry") (quoting *Fla. Power & Light Co.*, 470 U.S. at 744); *NLRB v. Food Store Employees Union*, 417 U.S. 1, 10

(1974) ("[W]hen a reviewing court concludes that an agency invested with broad discretion . . . has apparently abused that discretion . . . remand to the agency for reconsideration, and not enlargement of the agency order, is ordinarily the reviewing court's proper course.").

Although vacatur of unlawful agency actions is the "presumptive remedy under the APA" in this judicial district,[1] *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022) (citing *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018)), courts remand without vacatur "when equity demands." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995). Therefore, courts are not mechanically "required to set aside every unlawful agency action." *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995); *see Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) ("A flawed rule need not be vacated."). "Even if an [agency's analysis] falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project[.]" *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 185 (2025). Instead, vacatur "depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (quoting *Allied–Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). "'[W]hen equity demands, the regulation can be left in place while the agency follows the necessary procedures' to correct its action." *Id.* (quoting *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405).

## ARGUMENT

The appropriate remedy here is a remand of the BiOp without vacatur. As the Court preliminarily held in its Opinion and Order, vacatur of the BiOp here is inappropriate. Rather, the

---

[1] The United States Department of Justice's position is that the APA does not authorize a court to vacate an agency rule, and that if vacatur is an available remedy, then like all equitable remedies it must be subject to traditional equitable limitations, including the principle of party-specific relief.

FEDERAL DEFENDANTS'
RESPONSE IN OPPOSITION                        5

legally appropriate form of relief is remand of the BiOp for further consideration consistent with the Court's Opinion and Order. By contrast, Plaintiffs' requested relief is inappropriate for several reasons. First, the Court lacks authority to issue, and Plaintiffs are not entitled to, any prophylactic relief contingent on a future ruling on the merits. Second, Plaintiffs' requested "interim injunction[,]" Pls.' Br. at 6, is not tailored to the APA violations the Court identified. Nor is it necessary to redress Plaintiffs' alleged harms. The Court should therefore deny Plaintiffs' novel request and remand the BiOp without vacatur.

**I.      Remand of the BiOp without vacatur is the appropriate remedy.**

The legally appropriate remedy is to remand the BiOp for further consideration consistent with the Court's decision and without vacatur. Indeed, the Court has already held that "vacatur [of the BiOp] is inappropriate." Dkt. No. 71 at 78. Because the HGMP approved by the BiOp includes "measures aimed at mitigating harm to the wild winter steelhead . . . [which] appear to the Court to be helpful to the listed species," the Court reasoned vacatur "would be disruptive and would not benefit the listed species" at this time. *Id.* The Court's holding indicates that the discrete and narrow APA violations identified do not warrant vacatur of the BiOp. *Id.* at 77 (noting "courts remand without vacatur 'when equity demands'" (quoting *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405)). Moreover, Plaintiffs themselves acknowledged that the Court need not necessarily vacate the BiOp as the appropriate remedy. Pls.' Opp., Dkt. No. 62 at 34 (noting the Court is not "required" to vacate the BiOp and approval of the HGMP).

Given the limited nature of the agency errors here, and the comparative disruptive consequences of vacatur by withdrawing critical mitigation measures in the HGMP approved in the BiOp, remand of the BiOp without vacatur is appropriate. *See Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 965–66 (9th Cir. 2005) (deciding to "remand this case to the Forest Service for further proceedings consistent with this opinion"); *Nat'l Wildlife Fed'n v. NMFS*, 839

F. Supp. 2d 1117, 1129 (D. Or. 2011) (finding vacatur of BiOp inappropriate because it would "remove beneficial measures . . . [that] provide some protection for the species" and result in "disastrous" consequences for the listed species and parties, and remanding BiOp to agencies until mitigation plans expired).

Additionally, NMFS is poised to issue a revised BiOp by August 28, 2026, that addresses the aspects of its analysis the Court identified in its Opinion and Order. Munn Decl. ¶¶ 5–9. This projected timeline is reasonable, following the extended pause for remedy negotiations between Plaintiffs and ODFW, and considering the excessive workload and staffing changes at the NMFS West Coast Regional Office. *Id.* ¶¶ 6, 9; *see Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976) (per curiam) (cautioning that a court must not "dictat[e] to the agency the methods, procedures, and time dimension of the needed inquiry" on remand "in the absence of substantial justification"). When this revised BiOp issues, it will supersede, and thus moot Plaintiffs' challenges to, the 2019 BiOp. *All. for the Wild Rockies v. Savage*, 897 F.3d 1025, 1031 n.8 (9th Cir. 2018); *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1096 (9th Cir. 2003) ("We have recognized that when one [BiOp] supersedes another, a challenge to the superseded [BiOp] is moot." (citation omitted)). Therefore, remand without vacatur would keep important protective measures in place for the species while NMFS undertakes the necessary revisions of its BiOp.

## II. Plaintiffs' requested injunction exceeds the Court's jurisdictional authority and equitable discretion.

The Court should reject Plaintiffs' request for an "interim injunction" ordering ODFW to cease summer steelhead releases into the North Santiam River until NMFS issues a new BiOp and the Court finds the BiOp lawful. Pls.' Br. at 1, 6, 22. Federal Defendants take no position on Plaintiffs' request for an injunction against ODFW's hatchery program until NMFS issues a new

BiOp. But Plaintiffs grossly overreach the Court's jurisdictional authority and broad equitable discretion when they ask that the Court keep any such injunction in place until "the Court approves [NMFS's new BiOp] as lawful." Pls.' Br. at 22.

First, Plaintiffs' requested injunction exceeds the Court's jurisdictional authority because it ties relief to the legal adequacy of a future, non-final agency action. Having found discrete aspects of the BiOp unlawful, the Court may remand the BiOp to NMFS for further consideration consistent with its Order. *See, e.g.*, *Nat'l Wildlife Fed'n v. NMFS*, 184 F. Supp. 3d 861, 949 (D. Or. 2016) (remanding BiOp "for further consultation"). It may also issue interim measures. *See, e.g.*, *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 558 F. Supp. 3d 1056, 1062 (D. Or. 2021), *amended by* No. 18-cv-00437-HZ, 2021 WL 12319692 (D. Or. Sep. 21, 2021); *Nat. Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 388 (E.D. Cal. 2007).

But as a jurisdictional matter, it *cannot* impose prophylactic relief tied to the substance or legality of a future agency decision that is presently neither final nor before the Court. *See Bennett*, 520 U.S. at 175 (providing a right to judicial review only of "final agency action for which there is no other adequate remedy in a court"); *id.* at 178 (limiting judicial review to actions that "mark the consummation of the agency's decisionmaking process" and from which "rights or obligations have been determined" (citations omitted)). A BiOp is a "final agency action" that can be challenged. *Id.* A *future* BiOp is not.

Here, Plaintiffs ask the Court to issue relief contingent on a ruling on the merits of a revised BiOp that has not yet issued, let alone been challenged by Plaintiffs. Such prophylactic relief would require the Court to tie the end of Plaintiffs' requested injunction to the substance and legal adequacy of a future, non-final BiOp, and in so doing, inappropriately constrain NMFS's decision-making. Although Plaintiffs may wish otherwise, relief may not extend beyond the normal ESA consultation and remand process to a theoretical ruling on the merits of NMFS's future BiOp. *See,*

*e.g.*, *S. Prairie Constr. Co. v. Local No. 627*, 425 U.S. 800, 803-04 (1976) (per curiam) (agreeing with the contention that the lower court "invaded the statutory province of the [agency]" by deciding an issue that had not been addressed by the agency "instead of remanding the case to the [agency] so that it could make the initial determination"). Plaintiffs have cited no case that has provided this sort of novel relief, and we are unaware of any such decisions. Because Plaintiffs' requested injunction exceeds the Court's jurisdictional authority, the Court must deny it on this basis.

Second, the relief Plaintiffs seek would also vastly exceed the Court's broad equitable authority to fashion an appropriate remedy. By tying their requested injunction to NMFS's future decision-making, Plaintiffs' proposed remedy is not only at odds with the ESA's detailed consultation process, but it runs contrary to the bedrock principle of administrative law that a court may not direct or constrain the substance of an agency's determination in an exercise of its statutory authority.

"The principal purpose of the APA . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004); *see also Selkirk Conservation All. v. Forsgren*, 336 F.3d 944, 953–54 (9th Cir. 2003) (APA requires narrow review of agency decisions, and courts "cannot substitute [their] judgment for that of the [agencies]"). A court may not demand that an agency reach a particular result on remand. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Nat'l Tank Truck Carriers v. EPA*, 907 F.2d 177, 185 (D.C. Cir. 1990) ("We will not, indeed we cannot, dictate to the agency what course it must ultimately take." (citation omitted)). To do otherwise would "run[] the risk of 'propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.'" *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def.*

FEDERAL DEFENDANTS'
RESPONSE IN OPPOSITION                              9

*Council*, 435 U.S. 519, 544–45 (1978) (quoting *Chenery Corp.*, 332 U.S. at 196); *see Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952) (holding that remand order modifying agency-issued license "usurped an administrative function" because the "function of the reviewing court ends when an error of law is laid bare[,]" and "[a]t that point the matter once more goes to the [agency] for reconsideration" (citations omitted)). Indeed, it would be inequitable and inappropriate for a court to impose relief with which a defendant may not feasibly comply. *See Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987). Thus, an agency ordered to reconsider or explain a prior decision retains the discretion to determine how it "may best proceed to develop the needed evidence and how its prior decision should be modified in light of such evidence as develops." *Fed. Power Comm'n*, 423 U.S. at 333–34.

"[D]eference to the agency is at its highest where a court is reviewing an agency action that required a high level of technical expertise"—such as a BiOp. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) (citations omitted). Accordingly, judicial restraint is particularly appropriate in the context of environmental cases; a court's efforts to fashion a remedy in matters involving "environmental regulation, a process of great complexity, should be accomplished with as little intrusiveness as feasible." *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980); *see Nat'l Wildlife Fed'n v. NMFS*, 524 F.3d 917, 936 (9th Cir. 2008) (affirming remand order was appropriate, provided it was not interpreted "as a broader license to direct the remand proceedings"). While a remedy order may incorporate provisions "to ensure ultimate compliance," a court must also remain "careful to leave the substance and manner of achieving that compliance entirely to the [expert agency]." *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986–87 (9th Cir. 1994); *see Nat'l Wildlife Fed'n*, 524 F.3d at 937; *see also Oceana, Inc. v. Ross*, 483 F. Supp. 3d 764, 788 (N.D. Cal. 2020) (declining request to incorporate proposed requirements in new rule because "[t]he [c]ourt will not dictate the substance of any new [] rule on

FEDERAL DEFENDANTS'
RESPONSE IN OPPOSITION                          10

remand" (citing *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980))).

So too here, where the substance of Section 7 consultation—such as NMFS's jeopardy analysis—falls squarely within the agency's purview and expertise. *See Nat'l Wildlife Fed'n*, 524 F.3d at 937. Plaintiffs' proposed remedy oversteps by presuming the substance and legality of that determination. "[T]here are [] limits to the courts' power to control an agency's conduct on remand[,]" *id.*, and remand orders should not operate as "a broader license to direct the remand proceedings." *Id.* at 936; *see Fed. Power Comm'n*, 423 U.S. at 331 (finding court of appeals had "overstepped the bounds of its reviewing authority" by ordering direct evidentiary report). Although the Court may offer "specific direction" to the expert agency, such as instructing deeper examination of certain issues, it may not "direct the substance of the [agency's] actions on remand, and may not be interpreted to do so." *Nat'l Wildlife Fed'n*, 524 F.3d at 937. Courts addressing the appropriate remedy in other Section 7 cases have likewise refused to expand the scope of relief beyond a "reasonable means to ensure that [the agency] complies with [the] ESA's mandate." *Id.*; *see, e.g.*, *Nat'l Wildlife Fed'n v. NMFS*, 254 F. Supp. 2d 1196, 1215 (D. Or. 2003) (concluding "remand is appropriate in order to give NOAA the opportunity to consult with interested parties to insure that [certain actions] are considered in the [jeopardy] determination"); *Nat'l Wildlife Fed'n v. NMFS*, 422 F.3d 782, 800 (9th Cir. 2005) (remanding back to district court to determine whether preliminary injunction "should be more narrowly tailored or modified"); *Nat'l Wildlife Fed'n*, 839 F. Supp. 2d at 1130 (remanding flawed BiOp to NMFS to address specific issues identified by the court, and ordering agency to issue new BiOp by date certain).

To the extent Plaintiffs preemptively challenge the not-yet issued BiOp, Plaintiffs cannot and should not raise those issues in remedy briefing. Any future revised BiOp is a new exercise of the agency's authority, entitled to a presumption of validity. *See Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971) (agency decision is entitled to a presumption of regularity),

*abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 (1977); *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 994 ("The arbitrary or capricious standard is a deferential standard of review under which the agency's action carries a presumption of regularity." (citations omitted)). Once a new BiOp issues, NMFS will have satisfied its Section 7 consultation duties, and Plaintiffs' challenges to the prior consultation will be moot. As the Ninth Circuit made clear in *Alliance for the Wild Rockies v. Savage*, mootness eliminates a court's jurisdiction over ESA consultation claims, compels dismissal of those claims, and eliminates the basis for and compels vacating any injunction in effect. 897 F.3d at 1031 n.8. Therefore, any new challenge to the revised BiOp must be raised in a new lawsuit. And if Plaintiffs intend to levy an ESA challenge to the revised BiOp, such claims would require a new sixty-day notice of intent to sue. *See Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1150 (9th Cir. 2024) ("A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." (quoting *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998))).

      The cases Plaintiffs cite do not support their request. In *Northwest Environmental Defense Center v. U.S. Army Corps of Engineers*, after finding that NMFS had violated its *procedural* duty under the ESA by failing to reinitiate consultation on the Corps' ongoing operation of a system of dams, the Court ordered NMFS to reinitiate consultation and issue a new BiOp by a date certain. 558 F. Supp. 3d at 1076. During the remand process, it also issued specific interim measures it concluded were "biologically necessary" to protect listed salmonids. *Id.* at 1076–77. However, the Court limited duration of the interim measures "[u]ntil Defendants issue a new biological opinion"—it did not hang its interim relief on a future favorable ruling on the merits of that pending agency decision, as Plaintiffs request here. *Id.* at 1077; *see also S. Yuba River Citizens League v. NMFS*, 804 F. Supp. 2d 1045, 1067–68 (E.D. Cal. 2011) (limiting implementation of interim injunction measures during ESA remand "upon a showing that [Defendants] have complied

with this court's remand order" requiring NMFS to prepare a new BiOp consistent with the order by a date certain). *Northwest Environmental Defense Center* is also completely inapposite to the facts here, as the procedural duty to consult is an entirely different principle than the sufficiency of a BiOp, which is at issue in this case.

Plaintiffs even appear to contradict their *own* requested relief by noting that the interim relief they seek "is also not permanent in the conventional sense because *it may be lifted after Defendants issue a new biological opinion*." Pls.' Br. at 6 (emphasis added) (quoting *Nw. Env't Def. Ctr.*, 558 F. Supp. 3d at 1062). Unlike other statements in their motion, Plaintiffs here say nothing about first securing a favorable ruling on the merits regarding a hypothetical future challenge to that agency decision. *Compare* Pls.' Br. at 6 *with id.* at 1, 22 (requesting the Court impose relief until the Court approves the revised BiOp as lawful). Plaintiffs' inconsistent description of their proposed remedy further belies the inappropriate and ill-conceived nature of their request.

NMFS is in the process of discharging its Section 7 obligations to consult on the effects of ODFW's summer steelhead hatchery. Munn Dec. ¶¶ 5–8. Until a revised BiOp issues and is properly challenged by Plaintiffs in accordance with the ESA and APA's requirements, it is non-final and not presently before the Court. Therefore, any remedy issued now cannot be tied to its theoretical substance and legality. Plaintiffs' prophylactic relief exceeds the Court's jurisdictional and equitable authority and cannot issue.

### III. Plaintiffs' requested injunction is inappropriate because it is not tailored to the identified APA violations, and lesser forms of relief are available.

The Court should further deny Plaintiffs' requested interim injunction because it is overbroad and because less drastic forms of relief are available.

First, Plaintiffs' requested interim injunction is not appropriately tailored to the APA

violations the Court identified. "Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad [] injunction is an abuse of discretion." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (citation omitted). Plaintiffs "must show that each item of injunctive relief they seek is necessary to avoid irreparable harm to the listed species during the interim period." *S. Yuba River Citizens League v. NMFS*, No. 13-CV-00042, 2013 WL 4094777, at *8 (E.D. Cal. Aug. 13, 2013) (citation omitted). They fail to do so here.

At summary judgment, the Court granted in part and denied in part[2] Plaintiffs' claims with respect to NMFS's assessment of winter steelhead effects in its BiOp. The Court held that (1) NMFS failed to appropriately consider in the baseline the effect of downgraded habitat on winter steelhead eggs in the Santiam basin below Willamette Valley Project dams, Dkt. No. 71 at 29–30; (2) NMFS's conclusion that the effects of competition from hatchery steelhead on winter steelhead is low was arbitrary and capricious, *id.* at 46; (3) NMFS failed to consider that displacement of winter steelhead is an important aspect of the proposed project, *id.* at 51; (4) NMFS failed to evaluate the consequences of projected worsening conditions due to climate change; *id.* at 53–54; and (5) NMFS's no-jeopardy conclusion based on gene flow rate methodology was arbitrary and capricious, *id.* at 64–65. Therefore, the Court's findings were

---

[2] The Court rejected Plaintiffs' claims challenging whether NMFS used the best available science in the environmental baseline section to analyze: (1) impacts on rearing juvenile and adult winter steelhead, Dkt. No. 71 at 30–33; (2) summer steelhead population data, *id.* at 33–34; (3) effects of residualized summer steelhead on winter steelhead, *id.* at 34–36; and (4) effects of summer steelhead fishing on adult winter steelhead, *id.* at 36–37. The Court further rejected Plaintiffs' claims that parts of NMFS's analysis were arbitrary and capricious, upholding NMFS's analysis of: (1) predation on winter steelhead eggs by newly released hatchery summer steelhead, *id.* at 38–41; (2) predation on newly emerged/rearing winter steelhead by residualized summer steelhead, *id.* at 41–42; and (3) modeling methodologies to assess competition and predation effects, *id.* at 47–49. The Court also found that the HGMP's proposed mitigation measures, including advancing hatchery steelhead spawning timing, suspension of recycling summer steelhead, and reducing releases in the South Santiam River, were reasonably certain to occur. *Id.* at 65–70. And the Court rejected Plaintiffs' challenge that the incidental take statement was arbitrary and capricious. *Id.* at 70–74. Finally, the Court upheld the agency's compliance with NEPA. *Id.* at 74–77.

largely predicated on NMFS's failure to adequately explain or support its scientific conclusions based on the record before it. *See, e.g.*, *id.* at 29–30 (noting that although NMFS discussed the effects of degraded habitat on winter steelhead eggs, it failed to provide a "full picture" of the effects). NMFS is in the process of developing a revised BiOp that directly addresses the Court's concerns on these issues, updates its analysis with new information, and more fully explains its conclusions. Munn Decl. ¶¶ 5–9; *see* Exs. 1, 2.

      Despite these discrete and narrow violations, Plaintiffs nonetheless request "an injunction on summer steelhead releases into the North Santiam in the period before NMFS prepares a new BiOp and the Court approves it as lawful." Pls.' Br. at 22. They allege that their members' interest in winter steelhead will be "irreparably harmed absent an injunction" because continued releases of summer steelhead will render winter steelhead "even less likely to recover[.]" *Id.* But such relief extending beyond the normal remand process is not appropriately tailored to the alleged harm stemming from the identified APA violations. Indeed, as discussed in Section I. *supra*, the Court found that NMFS's errors did not appear to warrant even *lesser* form of relief (vacatur), noting that the HGMP approved in the BiOp includes "measures aimed at mitigating harm to the wild winter steelhead . . . [which] appear to the Court to be helpful to the listed species." Dkt. No. 71 at 78. Thus, the agency's limited errors in the BiOp do not warrant Plaintiffs' sweeping relief.

      Moreover, Plaintiffs' years-long delay in requesting injunctive relief belies the urgency of the irreparable harm they allege. "A delay in seeking [an] [] injunction is a factor to be considered in weighing the propriety of relief." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (citation omitted). Although "[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper[,]" a "long delay before seeking injunctive relief implies a lack of urgency and irreparable harm." *Doe #1 v. Trump*, 414 F. Supp. 3d 1307, 1316–17 (D. Or. 2019) (citation modified).

This case was initially filed in January of 2021. *See* Pls.' Compl. At no time during the pendency of this litigation did Plaintiffs seek an injunction halting summer steelhead releases into the North or South Santiam Rivers. Yet Plaintiffs now suddenly claim that their members will not fish at all in the Santiam Basin out of "fear of harming the species" "until the [winter steelhead] recover." Pls.' Br. at 22 (citing Declaration of Christina Eastman, Dkt. No. 53 ¶ 4; Declaration of Bill Bakke, Dkt. No. 51 ¶¶ 8, 12). Plaintiffs fail to establish that their requested injunction—spanning until the Court rules on the merits of NMFS's future BiOp—is necessary *now* to protect their members' interest in winter steelhead from any imminent harm. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("It is generally recognized that a [Plaintiff's] 'long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm[.]'" (quoting *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)); *Doe #1*, 414 F. Supp. 3d at 1317 (same). And that their delay remains unexplained only undermines the urgent nature of their request. *Singh v. Cruz*, No. 26-CV-00141, 2026 WL 77437, at *1 (E.D. Cal. Jan. 9, 2026); *Lee v. Haj*, No. 16-cv-00008, 2016 WL 8738428, at *2 (E.D. Cal. Feb. 22, 2016) ("Plaintiffs' unexplained delays in seeking immediate injunctive relief militate against a finding of irreparable harm and against the issuance of [injunctive relief].").

Second, and as the Court observed, lesser forms of relief—such as vacatur of the BiOp, or remand without vacatur—are available here. Dkt. No. 71 at 77–79. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). Equitable remedies should only issue where legal remedies are inadequate and where intervention is required to ensure against irreparable harm. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982). Accordingly, the Court has an obligation to consider lesser forms of relief. *See Salazar v. Buono*, 559 U.S. 700, 721–22 (2010) ("Even if . . . the land transfer were thought an insufficient accommodation in light of

the earlier finding of religious endorsement, it was incumbent upon the District Court to consider less drastic relief than complete invalidation of the land-transfer statute." (citations omitted)); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 854 (2025) (instructing lower courts to "determine whether a narrower injunction is appropriate"); *Sierra Club v. Trump*, No. 19-CV-00892, 2025 WL 2956000, at *3 (N.D. Cal. Sept. 26, 2025) (noting the court "considers whether some lesser form of emergency relief is appropriate under the circumstances"). "If a less drastic remedy (such as partial or complete vacatur of [an agency's decision]) [is] sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co.*, 561 U.S. at 165–66; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 33 (2008) (noting a court may order "an injunction tailored to the preparation of an [agency decision]").

By seeking to enjoin the very action NMFS's BiOp authorized, Plaintiffs' injunction operates as an effective vacatur of the BiOp without directly requesting one. Instead, to achieve the same result, Plaintiffs could have sought a lesser form of relief—such as vacatur or partial vacatur of the BiOp and NMFS's authorization of the HGMP—which, if granted, would halt ODFW's summer steelhead releases and provide Plaintiffs complete redress for their alleged harms. As less drastic forms of relief are available here, Plaintiffs' "additional and extraordinary" injunction is not warranted, *Monsanto Co.*, 561 U.S. at 165–66, and the Court should deny it accordingly.

## CONCLUSION

Plaintiffs' proposed interim injunction exceeds the Court's jurisdictional and equitable authority, threatens to impede future agency decision-making, and is unnecessary. Instead, the appropriate legal remedy is remand of the 2019 BiOp without vacatur, which would allow NMFS to revise the BiOp in accordance with the Court's Opinion and Order and its ESA consultation obligations. Accordingly, the Court should deny Plaintiffs' motion for relief as against Federal Defendants and remand the BiOp without vacatur.

Dated: March 13, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON,
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
MEREDITH L. FLAX, Deputy Section Chief
NICOLE M. SMITH, Assistant Section Chief

*/s/ Kieran F. O'Neil*
KIERAN F. O'NEIL, Trial Attorney
AK Bar No. 2311132
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Tel:   (202) 598-0409
Fax:   (202) 305-0275
Email: Kieran.O'Neil@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I electronically filed and served the foregoing Federal Defendants' Response in Opposition on all counsel of record via the CM/ECF system.

>/s/ Kieran F. O'Neil
>KIERAN F. O'NEIL, Trial Attorney
>AK Bar No. 2311132
>Wildlife & Marine Resources Section
>P.O. Box 7611, Ben Franklin Station
>Washington, D.C. 20044-7611
>Tel:    (202) 598-0409
>Fax:   (202) 305-0275
>Email: Kieran.O'Neil@usdoj.gov
>
>*Attorney for Federal Defendants*